Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Aug 08 2013, 5:32 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN S. ANTALIS**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TAMERA RICHARDS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1301-CR-38 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1206-FB-14

**August 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Petitioner, Tamera Richards (Richards), appeals her sentence for Count XI, Causing Death While Operating a Motor Vehicle with a Schedule I or II Controlled Substance in the Body, a Class B felony, Ind. Code § 9-30-5-5; and Count XIV, being an habitual substance offender, a sentencing enhancement, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Richards raises one issue on appeal, which we restate as: Whether Richards' sentence was inappropriate considering the nature of the offense and the character of the defendant.

## FACTS AND PROCEDURAL HISTORY

On June 7, 2012, 43-year old Richards was operating a 1998 Chevrolet Venture at a higher rate of speed than appropriate for the conditions. She had three passengers in the vehicle when she crossed the centerline and collided with a 1996 Nissan King Cab driven by 65-year old Donna Wall (Wall) in Tippecanoe County, Indiana. Three of Richards' passengers sustained injuries, along with Wall's front seat passenger. Two weeks later, Wall died as a result of injuries sustained from that collision.

Following the accident, Richards was transported to St. Elizabeth East Hospital, where a blood sample was drawn for medical purposes. The medical staff also found ten blue pills in a cellophane wrapper, which were later identified as Alprazolam, a Schedule

IV controlled substance, in Richards' underwear. The lab results indicated that Richards' blood tested positive for benzodiazepines, THC, THC metabolite, and .089 blood alcohol concentration.

On June 26, 2012, Richards was charged with fourteen counts including operating a vehicle while intoxicated causing death, operating a vehicle with a controlled substance in her body causing death, as well as various lesser included offenses. Moreover, Richards was alleged to be an habitual substance offender. Richards pled guilty pursuant to a plea agreement to Count XI, Causing Death While Operating a Motor Vehicle with a Schedule I or II Controlled Substance in the Body, a Class B felony, Ind. Code § 9-30-5-5; and Count XIV, being a habitual substance offender based on prior crimes of possession of a controlled substance and operating a vehicle while intoxicated, a sentencing enhancement, I.C. § 35-50-2-8.

On December 13, 2012, at the sentencing hearing, Wall's boyfriend testified that Wall suffered for two weeks before succumbing to her injuries. Prior to her death, doctors had concluded that Wall's entire left arm, lower legs, and finger would have to be amputated if she survived because her injured extremities were turning black. Wall's boyfriend also testified that he was with Richards in the same ambulance after the accident and heard Richards say "she was real proud of the booze she was drinking," and went on to say she had seven or eight drinks that day. (Tr. pp. 27-28).

Officer Matthew Devine (Officer Devine) testified that he interviewed Richards three times after the collision. During these interviews, Richards blamed three different

people for grabbing the wheel and causing the accident. Richards also told Officer Devine that she had a high tolerance and could drink a case of beer and walk a straight line. Officer Devine stated that Richards' speech was slurred, and when he told her he could smell alcohol emanating from her breath, she laughed.

There was also testimony from an inmate incarcerated with Richards. The inmate testified that Richards talked about her crime frequently, and heard Richards state with regards to Wall that: "the [fucking bitch] was dying of cancer so [I] kind of did her a favor. […] [Wall] was probably under medication because she had cancer so she was probably on something as well." The presentence investigation report indicated that Richards self-reported that she is suffering from bi-polar disorder, manic depression, anxiety, and post-traumatic stress disorder, but reported that she was not under the care of any doctor nor prescribed medication at the time of the crime. On December 12, 2012, Richards was examined by a forensic psychologist prior to sentencing, and diagnosed as suffering from poly-substance dependence, major depressive disorder, and post-traumatic stress disorder. Richards described herself to the forensic psychologist as a crack head because she "smoked it all the time." (Tr. p. 72).

On December 13, 2012, based on the evidence available at sentencing, the court found the following aggravating factors: Richards' criminal history; Richards' substance abuse history; prior attempts at rehabilitation have failed; the victim of the offense was at least 65 years of age at the time of the offense; Richards recently violated probation, parole, and pre-trial release. The court found the following as mitigating factors:

Richards' guilty plea, mental health issues, prior correctional rehabilitation, and Richards' recent accomplishment of receiving her GED. Richards was sentenced to eighteen years of incarceration for Operating a Motor Vehicle with a Schedule I or II Controlled Substance in the Body Causing Death, a Class B felony, I.C. § 9-30-5-5, along with an additional seven year enhancement for being an habitual substance offender, I.C. § 35-50-2-8. The trial court executed 24 years of the 25 years to the Indiana Department of Correction, with the remaining year to be served on supervised probation.

Richards now appeals. Additional facts with be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Pursuant to Indiana Appellate Rule 7(B), this court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). A defendant "must persuade the appellate court that his or her sentence has met the inappropriateness standard of review." *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

II. *Sentence*

Richards contends that her twenty-five (25)-year sentence is inappropriate considering the nature of the offense and her character. Here, Richards was sentenced to a Class B felony, which carries a fixed term between six (6) and twenty (20) years, with the advisory sentence being ten (10) years. *See* I.C. § 35-50-2-5. In addition, her sentenced was enhanced by seven (7) of a possible eight (8) years due to being an habitual substance offender. I.C. § 35-50-2-8.

With respect to the nature of the offense, Richards had prior misdemeanor convictions for Operating a Vehicle While Intoxicated, Public Intoxication, Operating a Vehicle While Intoxicated Endangering a Person, and False Informing. (Appellant's App. p. 100). She also has prior felony convictions for Possession of a Schedule I, II, III, IV Controlled Substance, and Escape. Richards was adjudicated to be an Habitual Substance Offender in 2006. (Appellant's App. p. 100). On July 11, 2012, she was convicted of the felony offense of Attempted Residential Entry. She even has a pending case for Public Intoxication, along with five (5) Petitions to Revoke Probation filed, which were all found true. (Appellant's App. p. 100). Her prior convictions show a disregard for the law as well as an escalation in the severity of the crimes. *See Ruiz v. State*, 818 N.E.2d 927, 929 (Ind. 2004). As such, due to the extensive criminal history of Richards and the severity of this particular crime resulting in the death of 65-year old Wall, Richards' sentence of twenty-five (25)-years is appropriate with regards to the nature of the offense.

With respect to Richards' character, we note that she has an extensive criminal history and has violated probation on five (5) occasions. (Appellant's App. p. 100). Richards' has been through various substance abuse treatment programs since 1990, which have all failed. (Appellant's App. p. 104). Richards' long history of drug abuse has shown a disregard for the legal system and an inability to take responsibility for correcting her actions. Moreover, Richards' behavior following the car crash, where she bragged about the amount of alcohol she had consumed that day, and attempted to minimize her culpability by stating (with regards to Wall) "the F'ing B was dying of cancer so [I] kind of did her a favor," demonstrates that Richards did not appreciate the gravity of her conduct that ultimately resulted in the death of another individual. (Tr. p. 43) Based on these facts, we conclude that the trial court's imposition of sentence is appropriate in light of Richards' character.

## CONCLUSION

Based on the foregoing, we conclude that Richards' sentence was appropriate in light of her character and the nature of the offense.

Affirmed.

BRADFORD, J. and BROWN, J. concur