## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2019, 5:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin A. Conrad,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 20, 2019

Court of Appeals Case No.
19A-CR-756

Appeal from the Fountain Circuit Court

The Honorable Stephanie S. Campbell, Judge

Trial Court Cause No.
23C01-1710-F4-524

**Pyle, Judge.**

# Statement of the Case

[1] Justin Conrad ("Conrad") appeals, following a jury trial, his conviction for Level 4 felony child molest[1] and the sentence imposed. Conrad argues that: (1) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error; and (2) that his sentence is inappropriate. Concluding that Conrad has failed to show fundamental error and that his sentence is not inappropriate, we affirm Conrad's conviction.

[2] We affirm.

# Issues

1. Whether the prosecutor's statements during closing argument amounted to fundamental error.

2. Whether Conrad's sentence is inappropriate.

# Facts

[3] On October 20, 2017, twelve-year-old J.L. ("J.L."), the victim, and her family hosted a memorial at their home following a funeral for J.L.'s uncle. Several family members and friends attended the memorial, including twenty-eight-year-old Conrad, who was best friends with J.L.'s uncle. At some point during the evening, J.L. and her younger cousin fell asleep on a couch in the living room.

---

[1] IND. CODE § 35-42-4-3.

J.L. wore a shirt, pajama pants, and underwear as she slept. Nearby, her grandmother and two other cousins slept on the living room floor.

[4] The following morning, J.L. woke up because she felt a "scratching pain" immediately above her vagina. (Tr. Vol. 2 at 130, 208). J.L. testified that she could only see Conrad's wrist because the rest of his hand was in her underwear and that his hand was in her pants for "about 20 seconds." (Tr. Vol. 2 at 208). Following the encounter, J.L. saw Conrad sitting in the chair immediately next to her. After looking at Conrad, J.L. moved to the opposite end of the couch to lie behind her cousin. Conrad then moved to the couch and sat by J.L.'s feet. Visibly upset, J.L. eventually woke her mother up and informed her about what had occurred. Her mother looked for Conrad, but he had left the house.

[5] Fountain County Sheriff Deputy Scott Rainey ("Deputy Rainey") responded to the call and advised J.L.'s parents to take her to the hospital for a sexual assault examination. Deputy Rainey later located Conrad on a street near J.L.'s home and noticed that he "smell[ed] of alcohol" and "had some slurred speech." (Tr. Vol. 2 at 157). Deputy Rainey proceeded to interview Conrad because he was able to communicate "just fine" and could "understand what [they] were talking about." (Tr. Vol. 2 at 157-58). During this first interview, Conrad initially claimed that he had touched J.L.'s toe, then her waistline, and finally admitted that he touched the "fuzzy area above [J.L.'s] vagina." (Tr. Vol. 2 at 162). The next day, during a second interview, Conrad insisted that he had accidentally touched J.L., but not inside her pants, while he was trying to stand up.

[6] The State charged Conrad with Level 4 felony child molest and Level 6 felony sexual battery. The case proceeded to a jury trial, wherein J.L., J.L.'s mother, and Deputy Rainey testified to the facts above. During the State's closing argument, the following colloquy ensued:

> [The State]: You saw and heard directly from the victim what took place that morning. Based off that the defendant even verified a lot of the information but he just couldn't go as far as to tell you he did what he did. Defense counsel's role is to confuse you in the process. We heard in opening statements [that Defense Counsel] –
>
> [Defense Counsel]: Objection. Object to that characterization.
>
> [The State]: Each side has a role to play.
>
> The Court: It's closing argument.
>
> [The State]: Defense counsel is here to mislead you.
>
> [Defense Counsel]: Objection. That is not appropriate argument.
>
> [The State]: I can rephrase, Your Honor.
>
> The Court: Go ahead.
>
> [The State]: Defense counsel will characterize the evidence one way, but I will show you our way, what is true.

(Tr. Vol. 2 at 227). Conrad did not request an admonishment or move for a mistrial.

[7] In its final instructions to the jury, the trial court stated, in relevant part, that the "burden is upon the State to prove beyond a reasonable doubt that the defendant is guilty[,]" that Conrad was "presumed to be innocent[,]" and that

"[s]tatements made by the attorneys are not evidence." (Tr. Vol. 3 at 7, 9). Thereafter, the jury found Conrad guilty as charged.

[8] At the ensuing sentencing hearing, the trial court merged the sexual battery conviction into the child molest conviction for double jeopardy purposes. At the conclusion of the hearing, the trial court stated the following:

> In determining sentencing[,] the Court will not consider lack of remorse as an aggravating circumstance in that the defendant has maintained his innocence through trial, has the right to do that. That the Court will further take into consideration that while the victim was not less than 12 years of age[,] she was 12 years of age. That the crime was committed in the presence of other individuals who were 18 years of age, whether or not they were awake or asleep. The Court does not consider the failure to pay the community corrections supervision fee in full to be an aggravating circumstance or something that the Court will consider with regard to sentencing. The Court does consider the impact on the victim. Court does consider the relationship to the victim, but does not believe that the victim was in the care, custody or control of the defendant. The Court does consider the relationship of the defendant to the victim and the history in that as one of trust due to the close -- while not familial but close relationship of the victim to the defendant. The Court does not consider the criminal conviction of Mr. Conrad as a misdemeanor to be an aggravating circumstance. The Court does take into account Mr. Conrad's compliance with the terms of his community correction placement presentence. The likelihood as to whether or not this crime is likely to reoccur. The Court notes your request, [defense counsel], to take into account what you characterize as exceptional circumstances, but the Court declines to place itself in the position of the jury as the trier of the fact in that situation.[2]

---

[2] The exceptional circumstances comment was in reference to what defense counsel had previously described as a "significant lack of proof as to what happened" in the living room. (Tr. Vol. 3 at 34).

(Tr. Vol. 3 at 36-37). Thereafter, the trial court sentenced Conrad to an advisory six (6) year sentence, with four (4) years executed in the Department of Correction and two (2) years suspended to probation. Conrad now appeals.

# Decision

[9] On appeal, Conrad argues that: (1) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error; and (2) his sentence is inappropriate. We will address each of these arguments in turn.

## 1. Prosecutorial Misconduct

[10] Conrad argues that the prosecutor committed two instances of prosecutorial misconduct during closing argument by inappropriately commenting on the role of his trial attorney. When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of conduct whether the prosecutor engaged in misconduct, and if so, we next determine whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014), *reh'g denied*.

[11] Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Neville*

*v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied*. Here, Conrad concedes that he did not request an admonishment after objecting to the comments made by the prosecutor during closing argument. Where a defendant does not raise a contemporaneous objection, request an admonishment, or, where necessary, request a mistrial, the defendant does not properly preserve his claims of prosecutorial misconduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

[12] To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, a defendant must establish the grounds for the prosecutorial misconduct, and he must also establish that the prosecutorial misconduct resulted in fundamental error. Ryan, 9 N.E.3d at 667-68. For a claim of prosecutorial misconduct to rise to the level of fundamental error, a defendant "faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Id*. at 668 (internal quotation marks omitted). Thus, the defendant "must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id*. (internal quotation marks omitted). The element of harm is not shown by the fact that a defendant was ultimately convicted. *Id*. Instead, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. *Id*. (quotation marks omitted).

[13] Here, Conrad asserts that the prosecutor committed two instances of prosecutorial misconduct. Specifically, Conrad argues that the prosecutor committed misconduct when he told the jury that defense counsel's "role is to confuse you in this process" and that she was there to "mislead you." (Tr. Vol. 2 at 227). When objecting to the prosecutor's comments regarding the role of opposing counsel, Conrad argued that the characterizations were not appropriate arguments. He did not, however, request an admonishment nor move for a mistrial.

[14] We acknowledge that the prosecutor's comments here "attack the integrity of defense counsel by suggesting that [s]he is trying to mislead the jury." *Marcum v. State*, 725 N.E.2d 852, 859 (Ind. 2000), *reh'g denied*. We, however, need not determine whether the prosecutor's two comments were improper or amount to misconduct because Conrad has not established fundamental error. *See Ryan*, 9 N.E.3d at 667-68 (explaining that to prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, a defendant must establish the grounds for the prosecutorial misconduct *and* that the prosecutorial misconduct resulted in fundamental error). "In evaluating the issue of fundamental error, our task in this case is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect of the jury's decision* that a fair trial was impossible." *Id.* (emphasis in original).

[15]     In looking at the challenged comments in light of the above mentioned relevant information, we do not believe that the comments by the prosecutor had a substantial effect on the jury's decision, making a fair trial impossible. Here, the jury had testimony from J.L., the victim, that Conrad placed his hand inside her underwear and scratched her pubic area. *See Baltimore v. State*, 878 N.E.2d 253, 258 (Ind. Ct. App. 2007) (holding that a conviction may be sustained by the uncorroborated testimony of a victim), *trans. denied*. Moreover, the jury was given instructions that the State had the burden of proof, that Conrad was innocent until proven guilty, and that statements made by counsel were not evidence. *See Ryan*, 9 N.E.3d at 672-73 (concluding that there was no fundamental error resulting from prosecutorial misconduct where the jury was properly instructed); *Emerson v. State*, 952 N.E.2d 832, 838 (Ind. Ct. App. 2011) (any misconduct in prosecutor's statement cured by court's general instruction), *trans. denied*. As a result, we conclude that, in the context of all that occurred during the trial and all relevant information given to the jury, the alleged misconduct did not have a substantial effect of the jury's decision and that it did not make a fair trial impossible.[3] Conrad has not shown that fundamental error occurred.

---

[3] Notwithstanding our conclusion, it is well-settled that prosecutor's who impugn the integrity and demean the role of defense counsel fall short of their obligation to show respect for our legal system. *See Marcum*, 725 N.E.2d at 859 ("comments that demean opposing counsel, especially in front of a jury, are inappropriate[]"); *Brummett v. State*, 10 N.E.3d 78, 85 (Ind. Ct. App. 2014). We caution the State against referring to defense counsel in this manner in all future proceedings.

## 2. Inappropriate Sentence

[16] Next, Conrad argues that his advisory sentence, which includes two years suspended to probation, is inappropriate. "This Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). "The 7(B) 'appropriateness' inquiry is a discretionary exercise of the appellate court's judgment, not unlike the trial court's discretionary sentencing determination." *Knapp v. State*, 9 N.E.3d 1274, 1291-92 (Ind. 2014), *cert. denied*. "On appeal, though, we conduct that review with substantial deference and give due consideration to the trial court's decision—since the principal role of our review is to attempt to leaven the outliers, and not to achieve a perceived correct sentence." *Id*. at 1292 (internal quotation marks, internal bracket, and citation omitted). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. The defendant has the burden of persuading the appellate court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[17] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the General Assembly has selected as

an appropriate sentence for the crimes committed. *Childress*, 848 N.E.2d 1081. Since the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence. *Golden v. State*, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), *trans. denied*. Here, Conrad was convicted of one (1) Level 4 felony. The sentencing range for a Level 4 felony is "for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." I.C. § 35-50-2-5.5. For his Level 4 felony conviction, the trial court sentenced Conrad to the advisory sentence of six (6) years, with two (2) years suspended to probation. Accordingly, Conrad received an executed sentence two years below the advisory sentence.

[18] Regarding the nature of his offense, Conrad attempts to mitigate the seriousness of his offense by arguing that the "event was neither prolonged nor extremely invasive." (Conrad's Br. 15). This argument is unavailing. As this Court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Here, while twelve-year-old J.L. slept, twenty-eight-year-old Conrad placed his hand inside J.L.'s underwear and scratched her pubic area. Nothing about the nature of the offense warrants a reduction in Conrad's advisory sentence, with two years suspended to probation.

As for his character, Conrad argues that his limited criminal history and mostly low risk scores on the Indiana Risk Assessment System ("IRAS") tool warrants a reduced sentence. Conrad is correct that when considering the character of the offender prong, one relevant consideration is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Here, Conrad's prior conviction for theft reflects poorly on his character. *See Id*. (any criminal history reflects poorly on a person's character). Additionally, Conrad's IRAS scores are insufficient indicators of his good character. Our Supreme Court has held that such assessments are prepared by probation officers and other administrators relying on data and evaluations that "are not necessarily congruent with a sentencing judge's findings and conclusions regarding relevant sentencings factors." *Malenchick v. State*, 928 N.E.2d 564, 573 (Ind. 2010). Moreover, they are neither "intended nor recommended to substitute for the judicial function of determining the length of sentence appropriate for each offender." *Id*. Accordingly, based on the nature of the offense and his character, Conrad has failed to persuade us that his advisory sentence, with two years suspended to probation, is inappropriate.

Affirmed.

Robb, J., and Mathias, J., concur.